**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **TENNESSEE RIVERKEEPER, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. _____** |
| ) | |
| **ROBERT BARNES,** ) | **JURY TRIAL DEMANDED** |
| **d/b/a BARNES FILL SITE,** ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

The Plaintiff, Tennessee Riverkeeper, Inc. ("Plaintiff" or "Riverkeeper"), states as follows:

### NATURE OF THE CASE

1.     This is a citizen's suit, brought pursuant to the provisions of Section 505(a)(1) of the Federal Water Pollution Control Act, also known as the Clean Water Act (hereinafter "CWA"), as amended, 33 U.S.C. § 1365(a)(1), and section 7002 of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(A),  to address violations of those acts by Defendant, Robert Barnes, d/b/a Barnes Fill Site ("Barnes" or "Defendant"), for violations of the CWA and the Tennessee Water Quality Control Act of 1977, as amended, § 69-3-101, *et seq.*, and the regulations thereunder, and under section 7002 of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(A), for violations of RCRA's prohibition on the operation of an open dump.

2.     Barnes is violating the CWA and RCRA due to operating a Construction and Demolition Landfill which discharges stormwater to waters of the United States and the State,

1

without first obtaining the proper National Pollutant Discharge Elimination System ("NPDES") permit.

3.     Barnes has obtained a General Permit for Discharges of Stormwater Associated with Construction Activities, General Permit No. TNR100000. However, since his operation meets RCRA's definition of a landfill, he should have, instead, applied for a Tennessee Stormwater Multi-Sector General Permit for Industrial Activities, General Permit No. TNR050000, which is more protective of water quality and specifically designed for landfill stormwater (Sector L), or an individual permit for this discharge.

4.     Barnes is also violating the CWA due to the unpermitted discharges of pollutants, more specifically, contaminated stormwater, from the Barnes Fill Site, located at 5795 Old Hickory Blvd, Nashville, Davidson County, Tennessee (the "Site").

5.     These CWA violations cause the Site to constitute an open dump, which is prohibited under RCRA.

6.     Barnes' operation of the landfill without adherence to RCRA and its regulations, including obtaining and adhering to a Solid Waste Disposal Permit, also causes the Site to constitute an open dump, prohibited under RCRA.

7.     To Plaintiff's knowledge and belief, Defendant receives solid waste materials from construction sites and other sources and is paid a fee to dispose of the materials at the Site.

8.     Defendant receives and permanently dispose of soil, stone, concrete, asphalt, and other materials.

9.     There are no legitimate construction purposes for the deposit of these materials at the Site.

2

10. Barnes has made insufficient effort to contain muddy runoff and debris from his property and the runoff is causing excessive turbidity, and likely water quality violations and the deposition of siltation and debris into an unnamed tributary of Sulphur Creek, Sulphur Creek itself, and/or the Cumberland River.

11. Barnes is in violation of sections 301 and 402 of the CWA (33 U.S.C. §§1311 and 1342) and sections 122.1, *et seq.,* of Title 40 of the Code of Federal Regulations.

12. These laws prohibit any facility from discharging pollutants to waters of the United States or waters of the state except as authorized by a permit issued pursuant to the NPDES.

13. Barnes does not have the required NPDES permit for stormwater discharges from a landfill, therefore any operation of the landfill or discharge is a daily violation.

14. Although he obtained the wrong permit for operation of a landfill, Barnes is violating provisions of the NPDES construction stormwater permit he did obtain, by operating the Site in a manner that discharges pollutants to the waters of the United States and of the State and his failure to operate the Site within the requirements of the construction stormwater general permit.

15. Riverkeeper seeks a declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of litigation costs, including attorney and expert witness fees, for Defendant's repeated and ongoing violations of the CWA and RCRA.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over the claims set forth in this Complaint by virtue of Section 505(a)(1) of the Federal Water Pollution Control Act ("FWPCA"), also known as the Clean Water Act, 33 U.S.C. §1365 (a)(1), Section 7002 of the Resource

3

Conservation and Recovery Act, 42 U.S.C. § 6972(a)(1)(A), and by virtue of 28 U.S.C. § 1331 (actions arising under the Constitution or laws of the United States).

17.     The relief requested is authorized pursuant to 28 U.S.C. § 2201-02 (power to issue declaratory relief in case of actual controversy and further necessary relief based on such a declaration), 33 U.S.C. § 1319(b), 1365(a) (injunctive relief), 33 U.S.C. § 1319(d), 1365(a) (civil penalties), and 42 U.S.C. § 6972(a)(1), which provides:

> The district court shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce the permit, standard, regulation, condition, requirement, prohibition, or order, referred to in paragraph (1)(A), to restrain any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in paragraph (1)(B), to order such person to take such other action as may be necessary, or both, or to order the Administrator to perform the act or duty referred to in paragraph (2), as the case may be, and to apply any appropriate civil penalties under section 6928(a) and (g) of this title.

18.     Venue is appropriate in the Middle District of Tennessee pursuant to 33 U.S.C. § 1365(c)(1) and because the acts, omissions, and/or violations complained of herein occurred, and continue to occur, within Nashville, Davidson County, Tennessee.


## NOTICE

19.     Plaintiff, Tennessee Riverkeeper ("Riverkeeper") has complied with the pre-suit notice provisions of the CWA.

20.     Pursuant to 33 U.S.C. § 1365(b)(1)(A), 40 C.F.R. Part 135, Riverkeeper, on November 17, 2023, gave Defendant notice of the violations alleged herein and its intent to sue after the expiration of sixty (60) days ("November Notice").

4

21.     At the same time, Riverkeeper mailed a copy of the November Notice to the Administrator of the Environmental Protection Agency ("EPA"), the Regional Administrator of Region IV of the EPA, and the Commissioner of the Tennessee Department of Environment and Conservation ("TDEC").

22.     Service of notice on Defendant was by certified mail.

23.     More than 60 days, and less than 120 days, have passed since the November Notice was served on Defendant and these agencies. The November Notice is attached hereto as Exhibit A and incorporated by reference herein.

24.     Since Riverkeeper gave notice, the violations complained of have not ceased, and are ongoing and neither the EPA nor the State of Tennessee has commenced and diligently prosecuted a civil or criminal enforcement action in a court of the United States or a state for the violations.

25.     Furthermore, prior to the November Notice, neither the EPA nor the State of Tennessee commenced and diligently prosecuted an administrative action under 33 U.S.C. §1319(g), or under a comparable Tennessee law, for the violations alleged herein.

26.     Neither the EPA nor the state has issued a final order not subject to further judicial review and Defendant has not paid a penalty assessed under 33 U.S.C. §1319(g), or under a comparable Tennessee law, for the violations.

27.     Riverkeeper will mail, contemporaneously with the filing hereof, a copy of this Complaint to the Administrator of the EPA, the Regional Administrator of EPA Region 4, the Region in which the violations are alleged to have occurred, and the Attorney General of the United States.

5

## PARTIES

28.     Plaintiff, Tennessee Riverkeeper, is a non-profit corporation formed in the State of Alabama and granted authority to operate in Tennessee by the Division of Business Services, State of Tennessee, as a non-profit foreign corporation.

29.     Riverkeeper has approximately 5000 members, and is dedicated to the preservation, protection, and defense of the Tennessee and Cumberland Rivers and their tributaries.

30.     Riverkeeper actively supports effective enforcement and implementation of environmental laws, including the CWA and RCRA, on behalf of and for the benefit of its members.

31.     Members of Tennessee Riverkeeper have recreated in, on or near, or otherwise used and enjoyed, or attempted to use and enjoy, the Cumberland River, (and its tributaries) in the past, and they intend to do so in the future.

32.     They have a direct and beneficial interest in the continued protection, preservation, and enhancement of the environmental, aesthetic, and recreational values in the Cumberland River and its tributaries.

33.     The quality of these waters directly affects the recreational, aesthetic, and environmental interests of certain members of Tennessee Riverkeeper.

34.     The recreational, aesthetic, and environmental interests of certain of Tennessee Riverkeeper's members have been, are being, and will be adversely affected by the Defendant's continued violation of the NPDES permit requirements, Tennessee NPDES rules, the CWA, and RCRA as alleged in this Complaint.

6

35.     Defendant's illegal discharges from the Site enter Sulphur Creek directly or by way of an unnamed tributary.  Sulphur Creek is a tributary of the Cumberland River.

36.     The violations alleged herein have had a detrimental impact on Tennessee Riverkeeper members' interests because the violations have adversely affected and/or diminished aquatic life and water quality in these waters and have made these waters less suitable for fishing, boating, swimming, wading, walking, observing nature, or relaxing.

37.     Riverkeeper's members would recreate more in and around these waters but for Defendant's illegal discharges of pollution.

38.     The Declaration of Joe Ingle is attached hereto as Exhibit 2 and incorporated by reference herein.

39.     Mr. Ingle is a member of Tennessee Riverkeeper who lives and farms on 27 acres of land on a tributary of Sulphur Creek just downstream of Barnes' property.

40.      Mr. Ingle has observed various debris, including rocks, metal, dirt, asphalt, mattresses, and other trash disposed of on Barnes' property.

41.     When it rains, Mr. Ingle's creek fills with muddy water, debris, and possibly other pollutants. He is concerned for the health of the sheep he keeps and his dog, as well as the use of that area of his property where he grows blueberries for sale.

42.     He enjoys watching wildlife on his property and he is concerned that exposure to polluted water and other contaminates will be detrimental to them.

43.     He is concerned about the loss of aesthetics to his property caused by the muddy creek water, debris, and the illegal dumping.

44. His concerns would be lessened, and the use and enjoyment of his property would be improved, if Barnes stopped dumping waste, cleaned up his property, removed the debris he has dumped, and stopped polluting the water.

45. Riverkeeper is a "citizen" within the meaning of 33 U.S.C. §§ 1365(g), 1365(a), and 42 U.S.C. § 6972(a), with standing to bring this action.

46. Barnes is an individual resident of Nashville, Tennessee, within the Middle District of Tennessee.

47. Barnes owns, operates, and is doing business as Barnes Fill Site.

48. Barnes is a "person" within the meaning of 33 U.S.C. §§1362(5) and 1365(a)(1).

## STATUTORY BACKGROUND

49.  Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants from a point source into waters of the United States unless the discharge is in compliance with various enumerated sections of the CWA.

50. Among other things, Section 301(a) prohibits such discharges not authorized by, or in violation of the terms of, a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

51. The State of Tennessee has been delegated the authority to implement the permitting programs of the CWA by the EPA, including the NPDES permit program, pursuant to 33 U.S.C. § 1342(b).

52. TDEC is the water pollution control agency for purposes of the CWA and has enacted regulations pursuant to that authority implementing the CWA's permitting programs within the State of Tennessee.

8

53.     A citizen suit, pursuant to 33 U.S.C. § 1365(a)(1), may be brought for violations of the terms and conditions of NPDES permits. 33 U.S.C. § 1365(f).

54.     Section 4005 of RCRA, 42 U.S.C. § 6945(a) and 40 C.F.R. § 257.1(a)(1) and (2), prohibit the operation of an open dump for land disposal of solid waste, as the term is defined in 42 U.S.C. § 6903(14) and in 40 C.F.R. Part 257.

55.     A citizen suit, pursuant to 42 U.S.C. § 6972, may be brought for violations of RCRA.

56.     A landfill that does not comply with applicable regulations (40 CFR 257.1, *et seq.*), is defined as an "open dump." 40 CFR 257.2.

57.     RCRA regulations define the term "open dump" as any facility or site where solid waste is disposed of which is not a sanitary landfill which meets the criteria promulgated under section 6944 of [Title 42] ..." 42 USC 6903(14).

58.     Promulgated under Title 42 section 6944 are the regulations found at 40 CFR 257.1 thru 257.4 which were adopted for determining which solid waste disposal facilities and practices pose a reasonable probability of adverse effects on health or the environment under sections of RCRA. 40 CFR 257.1.

59.     These regulations prohibit a facility from discharging pollutants into waters of the United States in violation of the requirements of the NPDES. 40 CFR 257.3-3.

60.     "Open dump" is also defined as a facility for the disposal of solid waste which does not comply with Title 40 CFR part 257.2.

61.     RCRA regulations define the term Construction and Demolition (C&D) Landfill as "a solid waste disposal facility subject to the requirements of subparts A or B of this part that

9

receives construction and demolition waste … A C&D landfill typically receives any one or more of the following types of solid wastes: Roadwork material, excavated material, demolition waste, construction/renovation waste, and site clearance waste." 40 CFR 257.2.

62.     RCRA regulations define the term "landfill" as an area of land or an excavation in which waste is placed for permanent disposal, and that is not a land application unit, surface impoundment, injection well, or waste pile. 40 CFR 257.2.

63.     RCRA regulations define the term *"Disposal"* as "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." 40 CFR 257.2.

64.     RCRA defines the term "solid waste" as "any garbage, refuse… and other discarded material …" 42 USC 6903(27).

65.     Facilities failing to satisfy any of the criteria in §§257.1 through 257.4, §§257.5 through 257.30, or §§257.50 through 257.107 are considered "open dumps", which are prohibited under section 4005 of the Act. 40 CFR 257.1(a)(1).

66.     Practices failing to satisfy any of the criteria in §§257.1 through 257.4 or §§257.5 through 257.30 or §§257.50 through 257.107 constitute "open dumping", which is prohibited under section 4005 of the Act. 40 CFR 257.1(a)(2).

67.     "For purposes of section 4004(a) of the Act [the section of the CWA pertaining to solid waste], a facility shall not cause a discharge of pollutants into waters of the United States that is in violation of the requirements of the National Pollutant Discharge Elimination System (NPDES) under section 402 of the Clean Water Act, as amended." 40 CFR 257.3-3(a).

10

## GENERAL ALLEGATIONS

68.     This is an action for declaratory judgment, injunctive relief, civil penalties, and litigation costs, including reasonable attorney's and expert witness fees, to enforce provisions of the CWA, RCRA, and regulations adopted pursuant to said acts.

69.     Barnes is in violation of sections 301 and 402 of the CWA (33 U.S.C. §§1311 and 1342) and sections 122.1, *et seq.,* of Title 40 of the Code of Federal Regulations, which prohibit a facility from discharging pollutants to waters of the United States or waters of the state except as authorized by a permit issued pursuant to the NPDES.

70.     Barnes has violated the CWA, RCRA, and Tennessee state laws by his failure to obtain a Solid Waste Disposal Permit prior to operating a Construction and Demolition Landfill.

71.     Barnes was required to obtain a Solid Waste Disposal Permit, and a Tennessee Stormwater Multi-Sector General Permit for Industrial Activities or a similar individual permit, prior to operating a C&D Landfill but instead obtained a Tennessee General Permit for Discharges of Stormwater Associated with Construction Activities. He is in violation of even that weaker permit.

72.     Barnes was granted coverage under the Tennessee General Permit for Discharges of Stormwater Associated with Construction Activities, Permit Number TNR100000 ("NPDES Permit" or "Permit"), which authorizes operators of point source discharges of <u>stormwater associated with construction activities</u> to discharge stormwater associated with construction activities into waters of the State of Tennessee, in accordance with the permit monitoring and

11

reporting requirements, effluent limitations, and other provisions from permit parts 1 through 10, from the subject outfalls to waters of the State of Tennessee. Barnes was assigned the permit tracking number TNR244605.

73.     Barnes should have applied for the Tennessee Stormwater Multi-Sector General Permit for Industrial Activities (or similar individual permit) because he is operating a landfill, which is one of the industries covered by this permit, and not a construction site.

74.     As set forth below, and in the November Notice, Barnes violated the CWA by operating the Site in a manner that discharges pollutants to the waters of the United States and waters of the state which are not authorized by permit.

75.     The violations set forth in the paragraphs above and in the November notice are continuing and ongoing, or are likely to recur, as of the date this Complaint is being filed.

## COUNT ONE

### FAILURE TO OBTAIN A SOLID WASTE DEPOSAL FACILITY PERMIT FOR THE OPERATION OF A CONSTRUCTION AND DEMOLITION LANDFILL IN VIOLATION OF THE CWA AND RCRA

76.     Riverkeeper hereby repeats, re-alleges, adopts, and incorporates by reference the paragraphs above as if fully set out in this count.

77.     Defendant failed to comply with the CWA and RCRA by failing to obtain a NPDES permit for the operation of a Construction and Demolition Landfill.

78.     The general permit coverage granted by the Notice of Coverage Barnes received from TDEC authorizes stormwater discharges associated with construction activities. It does not cover the operation of a landfill.

12

79.     No facility can lawfully store, process, or dispose of solid waste unless the operator has a solid waste disposal permit. TN Code §68.211.104 (2021), Tn Rule 0400-11-01-.02.

80.     To Plaintiff's knowledge and belief, Barnes receives materials from construction sites and others, including the general public, and is paid a fee to dispose of the materials at the site.

81.     The site is best characterized as a landfill rather than a construction site because it fits the definition of a Construction and Demolition Landfill.

82.     The Notice of Intent ("NOI"), or application, for the issuance of a General Construction Stormwater Permit was filed by Barnes rather than applying for a Tennessee Solid Waste Disposal Permit and a Tennessee Stormwater Multi-Sector General Permit for Industrial Activities permit, both of which would have more stringent discharge regulations, monitoring requirements, and landfill siting requirements.

83.     RCRA defines the term construction and demolition (C&D) Landfill as "a solid waste disposal facility subject to the requirements of subparts A or B of this part that receives construction and demolition waste … A C&D landfill typically receives any one or more of the following types of solid wastes: Roadwork material, excavated material, demolition waste, construction/renovation waste, and site clearance waste." 40 CFR 257.2.

84.     Solid waste disposal facilities are regulated in Tennessee by Tennessee Rule 0400-11-01-.01 *et seq.* (the "Rule.) Except as provided in the Rule, no facility can lawfully store, process, or dispose of solid waste unless the operator has a solid waste permit. Tn Rule 0400-11-01-.02.

85.     The Rule offers an exception to the permit requirements for several stated situations, including the "Disposal of construction/demolition wastes at facilities which are on-site

13

of generation and with a fill area of less than one acre in areal extent when completed." Tn Rule 0400-11-01-.02(1)(b)3(vi).

86.     Barnes' landfill is not subject to this exception because as stated in the Stormwater Pollution Prevention Plan (the "SWPPP"), this project accepts waste from offsite and the fill site is 28.9 acres.

87.     The general permit coverage granted by the Notice of Coverage issued by TDEC, authorizes stormwater discharges associated with construction activities. It does not cover stormwater associated with the operation of a landfill.

88.     The requirement for Defendant to obtain the proper NPDES permit authorizing these discharges arose at the time they first knew or should have known that pollutants were going to be discharged into surface waters.

89.     The Site discharges stormwater into waters of the United States and the State without meeting the applicable regulations or acquiring the proper NPDES permit.

90.     For these reasons, Barnes is in violation of RCRA, CWA, and Tennessee State Law, and subject to penalties, equitable relief, and other remedies provided by the Act.

<u>**COUNT TWO**</u>

**FAILURE TO OBTAIN A TENNESSEE STORM WATER MULTI-SECTOR GENERAL PERMIT FOR INDUSTRIAL ACTIVITIES**

91.     Riverkeeper hereby repeats, re-alleges, adopts, and incorporates by reference the paragraphs above as if fully set out in this count.

92.     Barnes is in violation of sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342, and 40 C.F.R § 122.1, *et seq*, as well as similar provisions of Tennessee law. *See,* The Tennessee Water Quality Control Act of 1977, as amended, § 69-3-101 through 69-3-137.

14

93.     These laws prohibit any facility from discharging pollutants to waters of the United States or waters of the state except as authorized by a permit issued pursuant to the National Pollutant Discharge Elimination System.

94.     The NOI for the issuance of a General Construction Stormwater Permit was filed by Barnes rather than applying for a Tennessee Solid Waste Disposal Permit and a Tennessee Stormwater Multi-Sector General Permit for Industrial Activities permit, General Permit No. TNR050000. ("Industrial SW Permit"), which would have more stringent discharge regulations and the Solid Waste Disposal Permit would have strict siting requirements.

95.     Landfills and Land Application Sites are covered under Part 11.L. of the Industrial SW Permit.

96.      Barnes was required to apply for either an Industrial SW Permit, or for an individual NPDES permit for his stormwater discharge. He applied for neither, but rather applied for and received coverage under the construction general permit.

97.     These violations have an adverse impact on waters of the United States and waters of the state, specifically of an unnamed tributary to Sulfur Creek, Sulfur Creek, and/or the Cumberland River, and on the recreational, aesthetic, environmental, and pecuniary interests of Riverkeeper's members in those waterways as set out in paragraphs 25 thru 38 above.

98.     Defendant should be subject to an enforcement order or injunction ordering it to fully comply with all requirements of its NPDES Permit and the CWA.

99.     Defendant should be subject to an enforcement order or injunction ordering it to cease the operation of a landfill until such time as he is able to obtain the proper permits.

15

100. Defendant should be subject to the assessment of civil penalties for these violations of the CWA pursuant to Section 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365.

101. For the purpose of assessing the maximum penalty which Barnes is liable, each day that the site has discharged pollutants in violation of its NPDES Permit and/or without a permit authorizing such discharges constitutes a separate violation of Section 301(a) of the CWA, pursuant to Section 309(d), 33 U.S.C. § 1319(d). Each violation of the permit or regulations, as set out above, constitutes a separate violation as well as each discharge point discharging in violation of the permit or regulations.

## COUNT THREE

### VIOLATIONS OF THE CONSTRUCTION STORMWATER GENERAL PERMIT AND OF THE CWA AND TENN WATER QUALITY CONTROL ACT OF 1977

102. Riverkeeper hereby repeats, re-alleges, adopts, and incorporates by reference the paragraphs above as if fully set out in this count.

103. Barnes is in violation of sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342, and 40 C.F.R § 122.1, *et seq*, as well as similar provisions of Tennessee law. *See,* The Tennessee Water Quality Control Act of 1977, as amended, § 69-3-101 through 69-3-137.

104. These laws prohibit any facility from discharging pollutants to waters of the United States or waters of the state except as authorized by a permit issued pursuant to the National Pollutant Discharge Elimination System.

### A. Failure to Conduct and Submit a Site Assessment.

105. In accordance with the Permit, Barnes created the SWPPP.

106. Section 1.4.2 of the Permit requires that "The SWPPP must be developed, implemented and updated according to the requirements in Part 5 and Section 6.4.1."

16

107. Permit Part 5.5.3.8. requires that a quality assurance of Erosion Prevention and Sediment Controls ("EPSCs") be done by performing site assessments.

108. The site assessment must be conducted at each outfall draining 10 or more acres. Site assessments must cover the entire disturbed area and occur within 30 days of construction commencing at each portion of the site that drains the qualifying acreage.

109. At a minimum, site assessments should be performed to verify the installation, functionality and performance of the EPSC measures described in the SWPPP.

110. If structural BMPs (or equivalent EPSC measures) are not constructed or construction is in progress at the time of the site assessment, a follow-up monthly assessment(s) is required until the BMPs are constructed per the SWPPP.

111. A drainage area of 10 or more acres includes disturbed and undisturbed portions of the site and areas adjacent to the site, all draining through the common outfall. Section 5.5.3.5. of the Permit.

112. The SWPPP, filed on or about July 20, 2020, acknowledges the requirement for a site assessment, however it does not appear from the public record that a site assessment was ever conducted and submitted to TDEC.

113. The SWPPP states that the area of the construction site is 28.90 acres. It fails to state the number of discharge points and does not identify them. It states that stormwater runoff will be directed to existing outfalls of Sulphur Creek and that outfall points are identified on sheet C1.01, however, no outfall points are depicted on the map labeled C1.01.

114. Based upon information and belief, Barnes has failed to conduct and submit a site assessment.

17

115.     Barnes has violated the permit by failure to file a site assessment and/or by failure to update the site assessment.

116.     Each day of operation without the required submission of an updated site assessment is a separate violation of the permit and the CWA.

**B.     Failure to Design, Install and Maintain Erosion Prevention and Sediment Controls Appropriate for the Site Conditions.**

117.     The Permit requires erosion prevention and sediment control. Permit, § 4.1.1.

118.     It states that the permittee is required to:

Design, install and maintain effective erosion and sediment controls to minimize the discharge of pollutants. At a minimum, such controls must be designed, installed and maintained to:

1)     Control stormwater volume and velocity to minimize soil erosion in order to minimize pollutant discharges;
2)     Control stormwater discharges, including both peak flowrates and total stormwater volume, to minimize channel and streambank erosion and scour in the immediate vicinity of discharge points;
3)     Minimize the amount of soil exposed during construction activity;
4)     Minimize the disturbance of steep slopes;
5)     Minimize sediment discharges from the site. The design, installation and maintenance of erosion and sediment controls must address factors such as the amount, frequency, intensity and duration of precipitation and the range of soil particle sizes expected to be present on the site.

120.     Defendant has failed to utilize stormwater control and erosion prevention measures to control stormwater volume and velocity and control stormwater discharges, as required by Permit Section 4.1.1 (1) and (2).

121.     Defendant has constructed steep slopes which have been allowed to erode and create rills and gullies.

122.     Because the SWPPP was not designed "to minimize erosion and maximize sediment removal resulting from a 2-year, 24-hour storm," it is not designed "to minimize

18

pollution discharges" or to "[m]inimize sediment discharges from the site," as required by Permit Section 4.1.1 (5).

    **C.**    **Failure to Apply Best Practicable Control Technology.**

123.    Section 4.1 of the Permit requires "Any point source authorized by this general permit must achieve, at a minimum, the effluent limitations representing the degree of effluent reduction attainable by application of best practicable control technology ("BPT") currently available."

124.    Defendant is in violation of this Section of the Permit in that the BPT has not been applied. Thus, Barnes violated this provision of the Permit.

    **D.**    **Failure To Design, Install, Implement and Maintain Effective Pollution Prevention Measures to Minimize the Discharge of Sediment and Other Pollutants.**

125.    Section 4.1.4. of the Permit requires "The permittee must design, install, implement, and maintain effective pollution prevention measures to minimize the discharge of sediment and other pollutants".

126.    Discharge of muddy, highly turbid water from the site demonstrates that effective pollution prevention measures were not designed, installed, implemented, and/or maintained, in violation of this provision of the Permit.

127.    The TDEC inspection on January 4, 2023, found no EPSC measures in place.

128.    A TDEC inspection on December 6, 2023, also found no EPSC measures protective of the stream on site.

129.    Defendant is in violation of this section of the Permit.

    **E.**    **Failure to Maintain Effective Best Management Practices.**

19

130.    Section 5.1 of the Permit requires that a SWPPP must be prepared and submitted along with the NOI as required in Section 1.4.2. The primary permittee must implement the SWPPP and maintain effective Best Management Practices ("BMPs") from commencement of construction activity until permanent stabilization is complete, or until the permittee does not have design or operational control of any portion of the construction site.

131.    Section 5.1 requires that a site-specific SWPPP must be developed for each construction project or activity covered by the permit. The design, inspection and maintenance of BMPs described in the SWPPP must be prepared in accordance with good engineering practices. At a minimum, BMPs shall be consistent with the recommendations contained in the current edition of the Tennessee Erosion and Sediment Control Handbook.

132.    Defendant has violated this Permit provision by failing to maintain effective BMPs from commencement of construction activity until permanent stabilization is complete.

**F.      Discharge Quality and Removal Violates the Permit.**

133.    With respect to discharge quality, Section 6.3.2(c) of the Permit provides that:

The stormwater discharge must not contain total suspended solids, turbidity, or color in such amounts or character that will result in any objectionable appearance compared to the turbidity or color of the receiving water, considering the nature and location of the water.

134.    The discharge from the site is turbid, is an objectionable color compared to the usual turbidity or color of Sulphur Creek and tributaries of Sulphur Creek, and solids are not removed before discharge to surface waters, in violation of this provision of the Permit.

**G.      Stormwater Discharges Cause Violation of State Water Quality Standard.**

20

135. The Permit "does not authorize stormwater or other discharges that would cause or contribute to a violation of a state water quality standard… Such discharges constitute a violation of this permit." Permit, §6.3.1.

136. The Permit provides as follow:

Pursuant to T.C.A. § 69-3-115 of The Tennessee Water Quality Control Act of 1977, as amended: a) Any person who violates an effluent standard or limitation or a water quality standard established under this part (T.C.A. § 69-3-101, et. seq.); violates the terms or conditions of this permit; fails to complete a filing requirement; fails to allow or perform an entry, inspection, monitoring or reporting requirement; violates a final determination or order of the board, panel or commissioner; or violates any other provision of this part or any rule or regulation promulgated by the board, is subject to a civil penalty of up to ten thousand dollars ($10,000) per day for each day during which the act or omission continues or occurs. b) Any person unlawfully polluting the waters of the state or violating or failing, neglecting, or refusing to comply with any of the provisions of this part (T.C.A. § 69-3-101, et. seq.) commits a Class C misdemeanor. Each day upon which such violation occurs constitutes a separate offense.

137. While this is a case for remedies provided by the CWA and RCRA, not state law civil or criminal remedies, the above provision shows the gravity placed on water quality violations by the TWQCA and sets the standard for discharges regarding such water quality violations.

138. The water use classification of Sulphur Creek and its tributaries is Fish and Aquatic Life, Recreation, Livestock Watering and Wildlife, and Irrigation.

139. The water use classification of Cumberland River in that section is Domestic Water Supply, Industrial Water Supply, Fish and Aquatic Live, Recreation, Livestock Watering and Wildlife, Irrigation and Navigation.

140. The criteria for the use of **Fish and Aquatic Life** includes the following:

Turbidity, Total Suspended Solids, or Color - There shall be no turbidity, total suspended solids, or color in such amounts or of such character that will materially affect fish and aquatic life. In wadeable streams, suspended solid levels

21

over time should not be substantially different than conditions found in reference streams. Tennessee Rules, Chapter 400-40-03-3(d).

141.    The criteria for the use of **Recreation** includes the following:

Total Suspended Solids, Turbidity, or Color - There shall be no total suspended solids, turbidity or color in such amounts or character that will result in any objectionable appearance to the water, considering the nature and location of the water. Tennessee Rules, Chapter 400-40-03-4(d).

142.    Defendant discharges and has discharged stormwater that is high in total suspended solids, turbidity, and color in violation of these effluent standards and water quality standards and thus in violation of the Permit and is therefore subject to these penalties in addition to penalties under the Clean Water Act.

**M.    Failure to Comply with Inspection Provisions.**

143.    Section 5.5.3.9 of the Permit requires operators to perform twice weekly site inspections to ensure proper installation, maintenance, and overall effectiveness of EPSCs. Based on the results of the inspection, the site description identified in the SWPPP and pollution prevention measures identified in the SWPPP must be revised as appropriate. Permit 5.5.3.9 (f).

144.    Inspections are required to be documented on the Construction Stormwater Inspection Certification Form provided in Appendix C of the permit. Permit 5.5.3.11 (g).

145.    The permittee is required to maintain a copy of all required inspection reports on-site and accessible to TDEC inspectors. Permit 7.2.1.

146.    The TDEC inspection on January 4, 2023, found that inspection reports were not made available on site.

147.    A TDEC inspection on December 6, 2023, also found the SWPPP and twice weekly inspection reports were not available for review.

148. The quality and quantity of polluted stormwater leaving the site is evidence of ineffective EPSCs which should have been identified and corrected following inspections. An inspection should have shown the inspector that the EPSCs are ineffective at preventing runoff. There is no indication on the record that the site description identified in the SWPPP and pollution prevention measures identified in the SWPPP have been revised to improve the effectiveness of EPSCs, as required by the Permit.

149. Barnes has either failed to conduct and document twice-weekly inspections, as required, or, if inspections are being performed, they are faulty and fail to identify all problems and violations. They fail to identify corrective actions or the corrective actions are not being followed.

150. Therefore, Barnes is in violation of this section of the Permit.

**N.     Discharging Contaminated Stormwater Without a Permit and/or In Violation of a Permit.**

151. On at least the following occasion, Barnes violated the CWA by discharging contaminated stormwater from Barnes Fill Site to Sulphur Creek and its tributaries without a NPDES Permit authorizing the discharges and/or in violation of their storm water general construction permit:   January 1, 2023, January 3, 2023, January 12, 2024, January 22, 2024, January 24, 2024, January 25, 2024, and January 27, 2024.

**M.     Conclusion to Count Three.**

152. These violations have an adverse impact on waters of the United States and waters of the state, specifically of the unnamed tributary, Sulphur Creek, and the Cumberland River, and on the recreational, aesthetic, environmental, and pecuniary interests of Riverkeeper's members in those waterways as set out in paragraphs 25 thru 38 above.

153.    Defendant should be subject to an enforcement order or injunction ordering it to fully comply with all requirements of its NPDES Permit and the CWA.

154.    Defendant should be subject to the assessment of civil penalties for these violations of the CWA pursuant to Section 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365.

155.    For the purpose of assessing the maximum penalty which Barnes is liable, each day that the site has discharged pollutants in violation of its NPDES Permit and/or without a permit authorizing such discharges constitutes a separate violation of Section 301(a) of the CWA, pursuant to Section 309(d), 33 U.S.C. § 1319(d). Each violation of the permit or regulations, as set out above, constitutes a separate violation as well as each discharge point discharging in violation of the permit or regulations.

## COUNT FOUR

### OPERATING A PROHIBITED OPEN DUMP IN VIOLATION OF RCRA

156.    Riverkeeper hereby repeats, re-alleges, adopts, and incorporates by reference the above paragraphs as if fully set out in this count.

157.    Defendant is in violation of section 4005 of RCRA, 42 U.S.C. § 6945, as Barnes Fill Site constitutes an open dump, as that term is defined in 42 U.S.C. § 6903(14) and in 40 C.F.R. Part 257.

158.    A landfill which does not comply with applicable regulations (40 CFR 257.1, *et seq*.), is defined as an "open dump." 40 CFR 257.2.

159.    Barnes Fill Site violates the prohibition of 40 CFR 257.3-3(a) that "a facility shall not cause a discharge of pollutants into waters of the United States that is in violation of the

24

requirements of the National Pollutant Discharge Elimination System (NPDES) under section 402 of the Clean Water Act."

160.    The Site constitutes an open dump, pursuant to 40 C.F.R. § 257.3-3, because, on at least the dates set out herein, contaminated stormwater from the site has been discharged, and continues to be discharge into Sulphur Creek and/or its tributary in violation of the requirements of the NPDES, of the CWA, and of RCRA.

161.    Section 4005(a) of the RCRA, 42 U.S.C., §6945(a), and 40 C.F.R. § 257.1(a)(1) and (2), prohibit the operation of an open dump for land disposal of solid waste.

162.    For these reasons, Barnes is in violation of the RCRA and subject to penalties, equitable relief, and other remedies provided by the Act.

## COUNT FIVE

### INJUNCTIVE RELIEF

3850    Riverkeeper hereby repeats, re-alleges, adopts, and incorporates by reference the above paragraphs as if fully set out in this count.#

164.    The violations set out herein will continue unless this Court enjoins Defendant from continuing to violate its permit.

165.    These violations have caused irreparable injury to some of Riverkeeper's members. Riverkeeper has no adequate remedy at law for the injuries caused to its members by Defendant's ongoing violations in that Riverkeeper would be forced to bring repeated and burdensome actions for each new injury to its interests if Defendant's ongoing violations are not enjoined.

166.    An injunction will be in the public's interest in this case. Because Defendant is in continuing violation of the law, the equities for an injunction weigh in Riverkeeper's favor.

25

167.    Therefore, Riverkeeper brings this cause of action to enjoin Defendant from engaging in any other affirmative act or conduct which would contribute to further permit violations.

## PRAYER FOR RELIEF

**WHEREFORE**, Riverkeeper respectfully requests that the Court grant the following relief:

a.    Plaintiff Riverkeeper requests the Court render a judgment finding and declaring that the Defendant, Robert Barnes, has violated and is in violation of the CWA, 33 U.S.C. §1311(a), Tennessee NPDES rules, and his permit.

b.    Plaintiff Riverkeeper requests the Court render a judgment finding and declaring that the Defendant, Robert Barnes, has violated and are in violation of the RCRA, 42 U.S.C. §6972(a)(1)(A).

c.    Plaintiff Riverkeeper requests and petitions this Court to enjoin the violations and any and all illegal conduct by Defendant, Robert Barnes,  as set out and alleged in Counts One thru Five above and issue an injunction compelling Defendant, Robert Barnes, to remedy the illegal discharges of pollutants into waters of the United States, to stop dumping of soil, rocks, and other material onsite, to remove illegally dumped soil, rocks, and other material and restore the site to its original condition, to cease collecting and deposition of solid  wastes until such time as he is fully and properly permitted, and to get an individual NPDES stormwater permit and an individual solid waste disposal permit, not the general permits.

d.    Plaintiff Riverkeeper requests and petitions this Court to assess a $64,618.00 (sixty-

four thousand, six hundred eighteen dollars) civil penalty (*see* 40 CFR § 19) against Defendant, Robert Barnes, for each violation and each day of continuing violation of the CWA for which Defendant are found liable pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a).

e.  Plaintiff Riverkeeper requests and petitions this Court for an award of litigation costs, including reasonable attorney's fees and expert fees, as authorized by 33 U.S.C. § 1365(d) and 42 U.S.C. § 6972(e).

f.  For such other, further or more general relief as this Court may deem appropriate.

Respectfully submitted this the 1st day of February, 2024.

s/ Mark E. Martin
Mark E. Martin
Alabama Bar No: ASB-9361-A41M
P.O. Box 1486
Oneonta, AL 35121
 Telephone: (205) 516-9350
mmartin@markemartin.com

s/ Elizabeth A. Alexander
Elizabeth A. Alexander, BPR No. 19273
Pepper Law, PLC
1801 West End Avenue, Suite 850
Nashville, TN 37203
Telephone: 615-256-4838
balexander@pepperlawplc.com

**Attorneys for Plaintiff Tennessee Riverkeeper, Inc.**